## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANTHONY DEFAZIO, | : | |
| | : | |
| Petitioner, | : | Civ. No. 16-1112 (KM) |
| | : | |
| v. | : | |
| | : | |
| CINDY SWEENEY and | : | |
| THE ATTORNEY GENERAL OF THE | : | **OPINION** |
| THE STATE OF NEW JERSEY, | : | |
| | : | |
| Respondents. | : | |
| | : | |

**KEVIN MCNULTY, U.S.D.J.**

## I.      INTRODUCTION

Before this Court is the petition of Anthony Defazio ("Petitioner" or "Mr. Defazio") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (DE 1, cited as "Petition"). Mr. Defazio is presently confined at Northern State Prison in Newark, New Jersey. For the reasons set forth below, his habeas petition is DENIED, and he is denied a certificate of appealability.

## II.      BACKGROUND

### A.  Factual Background

The facts of this case are set forth in the opinion of the Superior Court of New Jersey, Appellate Division, on Petitioner's direct appeal of his conviction. (DE 10-8 at 2-6.) The facts most pertinent to this Opinion are set forth below:

Mr. Defazio met the victim, Darlene Sanders, in May 1994. He lived with her and her four children in Virginia from July 1994 until April 1995, when Ms. Sanders moved to her own apartment. Defazio and Sanders had a tumultuous relationship, including: a restraining order against Mr. Defazio; a telephone call about child support in which Defazio told Sanders that he

would kill her; and Defazio's statements to others that he wanted to beat Sanders with a crowbar, dig a grave, put her in a hole, and put lime over her body; and witness testimony at that Defazio told them in 1997 that he "got rid" of Sanders. (*Id.* at 3-4.)

Around midnight on February 21, 1997, Mr. Defazio called a tow truck driver in Forks Township, Pennsylvania to pull his car from the mud. The tow truck driver found Defazio in a remote wooded area, became suspicious of Defazio's behavior, and called police. (*Id.* at 4.)

That day, Ms. Sanders's mother became upset after she did not return home or call. The mother contacted police on February 22, 1997. The police initiated an investigation, which eventually led them to question Defazio on February 24, 1997. He said he knew nothing about Sanders or her disappearance. (*Id.*)

Mr. Defazio then called his friend Herbert Sandberg and told him that the police had questioned him. According to Mr. Sandberg, Defazio told him that "something" had happened and he was going away for a long time. That same night, Defazio's friend David Riggin appeared at Defazio's house where, according to Mr. Riggin, Defazio asked him to tell the police that on February 21, 1997 (the date of Ms. Sanders's death), they had worked together on a job. Riggin refused. (*Id.*)

On Wednesday, February 26, 1997, officials in Pennsylvania unearthed Ms. Sanders's body. An autopsy revealed bruises indicating signs of a struggle. From the nature of the marks, the forensic pathologist opined that a person would "need a lot of strength to do this." He determined the cause of death to be manual strangulation. He testified that it was "impossible for it to be an accidental injury" because one "can't kill this individual unless [he] continue[d] to exert pressure" for one to two minutes after she had passed out for lack of air. (*Id.* at 4-5.)

2

On Friday, February 28, 1997, police arrested Mr. Defazio for the murder of Ms. Sanders. (*Id.* at 5.)

According to Mr. Defazio, Ms. Sanders had called him on February 20, 1997. They went to a movie on February 21, 1997, and returned to the victim's home where a fight ensued. Sanders slapped Defazio's ear, hit him with a hair brush, and kicked him. Defazio pushed her onto the bed, and she grabbed him by the neck when he jumped on top of her. He then grabbed her by the neck, "and the next thing he knew, 'she was limp.'" (*Id.* at 5-6.) He testified that he had his hands around Sanders's neck for what "seemed like a couple (of] seconds." (*Id.* at 6.) Later, he loaded her body into the trunk of the Honda of his then-current girlfriend, Donna Romano. He drove to Pennsylvania. When he found a deserted area, he dug a hole and put Sanders's body in it. When his car became stuck in the mud, he called a tow truck driver. (*Id.*)

### B. Procedural History

Following a jury trial, Mr. Defazio was found guilty of purposeful or knowing murder in violation of N.J. Stat. Ann. § 2C::11-3a(1) and 2C:11-3(a)2. (DE 10-29 at 2.) He was sentenced to life imprisonment, with a thirty-year period of parole ineligibility. (*Id.*)

Mr. Defazio appealed his conviction and sentence. (DE 10-6.) The Appellate Division affirmed his conviction on June 28, 2000. (DE 10-8 at 24.) The New Jersey Supreme Court denied certification on October 24, 2000. *State v. Franklin*, 762 A.2d 220 (N.J. 2000). On May 2, 2003, he filed a petition for post-conviction relief ("PCR"). (DE 10-13; DE 10-14.) Defazio then filed a motion to compel production of Ms. Sanders's mental health records, which the Honorable Diane Pincus, J.S.C., denied on February 16, 2012. (DE 10-50.)

On February 19, 2013, Judge Pincus denied Mr. Defazio's PCR application. (DE 10-16; DE 10-22 at 125-152.)

On March 11, 2013, Mr. Defazio filed a motion for reconsideration of denial of an evidentiary hearing in connection with his PCR petition. (DE 10-17; DE 10-18.) On August 21, 2013, Judge Pincus denied reconsideration. (DE 10-20.)

On March 27, 2014, Mr. Defazio appealed from Judge Pincus's denial of PCR. (DE 10-21.) The Appellate Division affirmed the denial of PCR on May 28, 2015. (DE 10-29.)

On January 29, 2016, the New Jersey Supreme Court denied certification. *State v. Franklin*, 129 A.3d 328 (2016).

On February 4, 2016, Mr. Defazio filed a motion for reconsideration of denial of certification. (DE 10-34.) On March 30, 2016, the New Jersey Supreme Court denied that motion. *State v. Franklin*, 129 A.3d 328 (N.J. 2016).

On February 23, 2016, Mr. Defazio filed his §2254 habeas petition with this Court. (DE 1 at 29.) The Petition raises six grounds, most with numerous sub-parts: (1) ineffective assistance of counsel ("IAC") – presented in five sub-parts (DE 1 at 7-20) ("Ground One")); (2) trial court errors, improper prosecutorial comment, and IAC -- presented in four sub-parts (*id.* at 20-23) ("Ground Two"); (3) due process violation from the State's purported withholding of "material and favorable" evidence (*id.* at 23-24) ("Ground Three"); (4) deprivation of due process rights as a result of the trial judge's facial expressions at trial and the trial court's failure to provide a self-defense jury charge or a limiting instruction regarding Defazio's pre-arrest silence (*id.* at 24-26) ("Ground Four"); (5) the trial judge's passion/provocation manslaughter instruction was "fatally flawed" because it impermissibly shifted the burden of proof and inadequately defined provocation (*id.* at 26) ("Ground Five"); and (6) deprivation of a fair trial from the admission of "highly prejudicial and irrelevant" evidence of Mr. Defazio's other bad acts. (*Id.* at 27-29) ("Ground Six").)

In July 2016, Respondents filed an answer (DE 9; DE 10), and in April 2017 Mr. Defazio filed a reply. (DE 23.)

## III.   LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40-41 (2012). District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination

of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Additionally, these standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011). "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* at 187-88 (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011) ). Furthermore, "when the relevant state-court decision on the merits ...does not come accompanied with ... reasons ... [w]e hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002) ). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). Nevertheless, to the extent that a petitioner's constitutional claims are unexhausted, a court can

nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## IV.   DISCUSSION

### A.  Ground One: Ineffective Assistance of Counsel

In Ground One, Mr. Defazio alleges that his trial counsel, A. Kenneth Weiner, Esquire, rendered ineffective assistance of counsel ("IAC"). (Petition at 7.)

The Sixth Amendment guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687.

First, a petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1088(2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 669. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." *Id.* at 1083.

7

On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the IAC issue was itself unreasonable, a higher standard. *Harrington*, 562 U.S. at 101.

### 1. IAC –Failure To Obtain Decedent's Medical Records

In Ground One's first sub-part, Mr. Defazio contends that Mr. Weiner failed to obtain certain medical records of Ms. Sanders that would have shown a "cardiomyopathy heart condition that would have impacted the 'causation' determination of the manner of death." (Petition at 9 ("IAC-Medical Records Claim").)

At trial, Defazio testified that during the fight with Sanders, he jumped on top of her and grabbed her by the neck to try to control her. The next thing he knew, she went limp and he realized that she was dead. (DE 10-8 at 6).

In PCR proceedings, Judge Pincus determined that "[t]he fact that Ms. Sanders suffered from a heart problem and, as a result, might have succumbed to strangulation more quickly than someone in perfect health, would not have lessened Defendant's criminal responsibility for causing Ms. Sanders' death." (DE 10-22 at 142-43.) Judge Pincus ruled that: "While it appears that Counsel may have been deficient in failing to obtain Ms. Sanders' medical records in order to provide them to his expert, and use them to cross-examine the State's expert, Defendant has not satisfied the second prong of *Strickland* in that he cannot demonstrate, to a reasonable probability, that, but for Counsel's deficient performance, the result of his trial would have been any different." (DE 10-22 at 142.)

Agreeing that Mr. Defazio's IAC-Medical Records Claim had no merit, the Appellate Division affirmed "for the reasons stated by Judge Pincus" (DE 10-29 at 8.) The Appellate Division agreed with the PCR court that Mr. Defazio had shown neither deficient performance

nor prejudice. First, the Appellate Division correctly set forth the governing *Strickland* standard,

under which a habeas petitioner must demonstrate both: (1) deficient performance by counsel

and (2) that defective performance's prejudice to the defense. (DE 10-29 at 8-9) (internal citation

and quotation marks omitted). Then, the Appellate Division explained Defazio's failure to satisfy

*Strickland*'s first prong:

> We agree with the PCR judge defendant did not, through sworn
> affidavits or certifications, demonstrate that trial counsel would
> have uncovered evidence supporting defendant's unsubstantiated
> assertions regarding the victim's health which caused her
> accidental death. Rather, as Judge Pincus noted, counsel did
> consult with a forensic pathologist prior to trial and the doctor's
> opinion was the victim's death was a homicide ...

(DE 10-29 at 9-10.) Finally, the Appellate Division explained Mr. Defazio's failure to satisfy

*Strickland*'s second prong:

> Moreover, we agree with the PCR judge that even if defendant
> could show deficient performance, his claims still fail under
> *Strickland*'s second prong ... To establish prejudice from a
> deficiency, the defendant must show "a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding
> would have been different." This "is an exacting standard: '[t]he
> error committed must be so serious as to undermine the court's
> confidence in the jury's verdict or the result reached.'" Defendant
> has proffered no facts to support a reasonable probability that the
> results of the trial would have been different. The PCR judge
> referred to the trial testimony of witnesses that defendant said in
> effect he would kill the victim, he would bury the body in the
> woods and cover it with lime. After the murder, defendant told a
> witness that he got rid of the victim by strangling her and that it
> was neat, bloodless, and easier than he thought. At trial, defendant
> admitted he did not try to resuscitate the victim or call anyone for
> help. Specifically, as the PCR judge stated, and we concur, "it is
> clear that the State had an extremely strong case against
> [d]efendant, which demonstrated that [d]efendant premeditated and
> planned the murder of [the victim] and disposed of her body."
> Consequently, we agree with the PCR judge defendant failed to
> present a prima facie case in support of post-conviction relief.

(DE 10-29 at 9-10.)

After reviewing the record and governing law, I find that the state courts' application of *Strickland* to the facts was not unreasonable.

First, as to *Strickland*'s deficient performance prong, medical records of Ms. Sanders's pre-existing heart condition would not have changed the facts about her strangulation -- or so a reasonable attorney could have thought. Defense counsel did not merely neglect the medical issue; he "consult[ed] with a medical pathologist prior to trial[,] [whose] opinion was the victim's death was a homicide." (DE 10-29 at 10.) The cause-of-death facts were established by Dr. Mihalakis, the forensic pathologist. (DE 10-22 at 131.) Mr. Defazio himself admitted grabbing the victim by her neck. (DE 10-8 at 6.) Under the deficient-performance prong of *Strickland*, I must indulge a presumption that counsel's choices about the victim's medical records were made in furtherance of a legal strategy. An application of common sense to the cause-of-death evidence and Mr. Defazio's own testimony here tend to confirm that presumption. In this context, the state courts' rulings that Mr. Defazio failed to show *Strickland* deficient performance were not unreasonable.

Second, as to *Strickland*'s prejudice prong, neither Judge Pincus's decision nor the Appellate Division's affirmance of it was an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Mr. Defazio did not deny grabbing the victim by her throat or that she died immediately thereafter. The State put forth testimony establishing the volatile nature of their relationship, including Defazio's previous threats to kill Ms. Sanders; witnesses' testimony that Defazio told them he wanted to kill her; and Mr. Sandberg's statement that Defazio told him, prophetically, that he had done "something" for which Defazio would be "going away for a long time." (DE 10-8 at 3-6.) In light of these facts,

Defazio has not shown that it is reasonably probable that, if counsel had obtained Ms. Sanders's cardiomyopathy medical records, the outcome of his case would have been different.

"Because a convicted defendant must satisfy both prongs of the *Strickland* test [*i.e.*, deficient performance and prejudice], failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong." *United States v. Manamela*, 612 F. App'x 151, 154 (3d Cir. 2015) (citing *Strickland*, 466 U.S. at 699). Here, Petitioner established neither, as the state courts reasonably found under a correct application of governing federal precedent. Accordingly, Ground One's IAC-Medical Records Claim is denied.

### 2. IAC –Failure To Pursue Self-Defense As An Alternative Defense

In Ground One's second sub-part, Mr. Defazio argues that Mr. Weiner was ineffective in failing to pursue self-defense as an alternative defense. (Petition at 13 ("IAC Self-Defense Claim").) Defazio alleges that a jury, based on an imperfect self-defense theory, could have convicted him of the lesser offense of second-degree reckless manslaughter. (*Id.* at 15.) He charges that a "financial conflict of interest" caused counsel to fail to obtain such evidence. (*Id.* at 13.) The Petition suggests that counsel opted to use limited resources to pay himself instead of experts who would have supported a self-defense theory. (*Id.* at 8, 20.)

Judge Pincus rejected Mr. Defazio's claim, citing *Strickland*'s principle that "[i]n hindsight, a court should not question trial counsel's strategy so long as it was reasonable." (DE 10-22 at 147.) Judge Pincus explained that self-defense would have been unsupportable on the facts:

> [A]n otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during trial. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude to thwart the fundamental guarantee of a fair trial.

11

In this case, it was a reasonable tactical decision for counsel to pursue the accidental nature of the death and passion/provocation manslaughter, rather than alternative defenses of self-defense, voluntary intoxication, and/or diminished capacity.

As to Defendant's suggestion that counsel should have pursued a strategy of self-defense, N.J.S.A. 2C:3-4(a) provides, in pertinent part, that the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion. N.J.S.A. 2C:3-4(b)(2). [Furthermore,] [a] person may not use more force than that which he reasonably believes is necessary to repel the attack. The amount of force must be proportionate to what the defendant reasonably believes [i]s necessary.

Even accepting Defendant's testimony as true, the assault was limited to Ms. Sanders hitting Defendant with a brush and slapping and kicking him. Other than a scratch on his neck, Defendant did not sustain any injuries. Strangling Ms. Sanders to death as a result of her hitting him with a brush and slapping and kicking him was certainly more force than that which was reasonably necessary to repel the attack. The amount of force was greatly disproportionate to what was reasonably necessary, and there is no support for the idea that Defendant believes the force was reasonably necessary to protect himself against death or serious bodily injury, as he only had a scratch on his neck that did not require any medical attention.

(DE 10-22 at 147-48.)

After citing the *Strickland* standard, the Appellate Division affirmed the PCR court's ruling, for "substantially the reasons stated by Judge Pincus." (DE 10-29 at 8.) The Appellate Division stated: "Defendant failed to offer any support for his contention that his counsel's … financial difficulties resulted in ineffective assistance of counsel." (*Id*. at 10.)

In finding that Mr. Defazio had not demonstrated *Strickland*'s deficient performance standard, the state courts' determinations were not objectively unreasonable. The record demonstrates that the victim's conduct towards Mr. Defazio consisted of a hair brush thrown at

him, a slap, and a kick. (DE 10-8 at 6.) Such non-lethal behavior is a far cry from warranting the use of deadly force, such as would have been required to argue self-defense under N.J. Stat. Ann. § 2C:3-4(a). The evidence at trial showed that Mr. Defazio's level of force was not commensurate with the victim's. Thus, self-defense, especially in the form of deadly force, was not a viable option under the governing law. In addition, reasonable counsel could have perceived that pursuing inconsistent defenses, or a blame-the-victim strategy, before the jury could have seriously backfired. In context, counsel's decision to pursue the stronger defense of accident, rather than a weaker theory of self-defense, did not "f[a]ll below an objective standard of reasonableness." *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). The state courts reasonably found that Mr. Weiner was not deficient in failing to pursue a self-defense defense at trial.

Accordingly, the state court rulings on this claim were neither contrary to nor an unreasonable application of federal precedent. Therefore, Ground One's IAC Self-Defense Claim is denied.

### 3. IAC –Failure To Engage In Plea Negotiations

In Ground One's third sub-part, Mr. Defazio contends that Mr. Weiner rendered IAC by "refus[ing] to approach the State to negotiate or discuss possibility of a plea, telling Petitioner that it was not legal to plea bargain a murder case." (Petition at 15 ("IAC-Plea Claim").) Defazio suggests that Weiner failed to engage in plea negotiations because he was fearful of exposing himself to criminal and ethical violations and because he had an interest in proceeding to trial for monetary gain. (*Id.* at 15-16.)

In PCR proceedings, Judge Pincus first summarized Mr. Defazio's IAC-Plea Claim, which is similar to the one asserted here:

> Defendant argues that Counsel was burdened by an actual conflict of interest that pitted Counsel's interests directly against those of

13

Mr. Franklin's, causing Counsel to refrain from entering into plea discussions/negotiations with the State. According to defendant, Counsel failed to initiate or engage in pre-trial plea discussions/negotiations because Counsel was fearful of exposing himself to criminal and or ethical violations and malpractice liability. Defendant also argues that Counsel had an interest in proceeding to trial in order to increase his personal pecuniary gain, in an effort to support and finance his growing drug and gambling addictions. According to Defendant, in November of 1997, Defendant and his parents requested that Counsel approach the State to discuss the possibility of a plea agreement. Defendant contends that Counsel refused to entertain any such possibilities and refused to broach the subject with the State. Defendant argues that ethically and professionally there is no question that Counsel was obligated to listen to Defendant and explore the possibility of a plea agreement and Counsel 's refusal to even approach the prosecutor was a violation of his professional obligation ...

(DE 10-22 at 143.) Judge Pincus then explained the law guiding the court's decision on the IAC-

Plea Claim:

R[ule] [of Professional Conduct] 3:9-3(a) provides in pertinent part that the prosecutor and the defense may engage in discussions relating to pleas and sentences and shall engage in discussions about such matters as will promote a fair and expeditious disposition of the case. This rule, however, does not mandate that the State offer a plea bargain to Defendant.

(DE 10-22 at 144.) Applying this law to the facts, Judge Pincus rejected the IAC-Plea Claim:

The certification of Assistant Prosecutor Thomas J. Kapsak makes it clear that no plea offer was extended by the State in this case and, therefore, there is no support for Defendant's position that Counsel avoided plea negotiations due to his conflict of interest.

(DE 10-22 at 144.)

In its opinion affirming the denial of PCR, the Appellate Division expressly affirmed the

ruling of Judge Pincus. (DE 10-29 at 10.) In so holding, the Appellate Division correctly noted

that the record conclusively refuted the IAC Plea-Claim:

Defendant failed to offer any support for his contention that his counsel's ethical violations, use of illegal drugs, and financial

14

> difficulties resulted in ineffective assistance of counsel. For
> example, defendant asserts, without evidential support, these issues
> caused counsel to not engage in plea negotiations. As the PCR
> judge pointed out in her opinion, the prosecutor's certification
> stated that *no plea offer was extended by the State*.

(*Id.*) (emphasis added). Thus, contrary to the IAC Plea-Claim's suggestion, there were not even

plea negotiations in which Mr. Defazio's counsel could have participated. Given the strength of

the evidence and the heinousness of the offense, it is plausible that the State would not have plea-

bargained. It was not within defense counsel's power to change that situation.

The state courts' determination on this issue was objectively reasonable. This is not the

classic claim that the State was prepared to negotiate or had offered a plea bargain, but trial

counsel failed to participate in negotiations or to communicate an offer to the client. Rather, the

State declined to offer a plea bargain, as was its prerogative. *See* New Jersey Rule of Court 3:9-

3(a) ("The prosecutor and the defense *may* engage in discussions relating to pleas and sentences

...") (emphasis added). There was nothing for Mr. Weiner to negotiate or communicate to his

client. Accordingly, there is no basis for finding Mr. Weiner's performance deficient.

The state court rulings that counsel's performance was not deficient under *Strickland*

were neither contrary to nor an unreasonable application of federal precedent. Thus, Ground

One's IAC-Plea Claim is denied.

### 4. IAC –Failure To Investigate Diminished Capacity / Voluntary Intoxication Defense

In Ground One's fourth sub-part, Mr. Defazio claims that Mr. Weiner knew Defazio was

on pain medication at the time of the crime, yet failed to develop or pursue an intoxication or

diminished capacity defense. (Petition at 16-17 ("IAC-Capacity Claim").)

After correctly stating the rule of *Strickland*, Judge Pincus ruled that:

> [I]t was a reasonable tactical decision for counsel to pursue the
> accidental nature of the death and passion/provocation
> manslaughter, rather than alternative defenses of self-defense,
> voluntary intoxication, and/or diminished capacity … [T]here is
> nothing in the record to support a diminished capacity or voluntary
> intoxication defense, other than Defendant's own certification
> which is no more than a bare allegation, upon which PCR relief is
> not granted. Furthermore, it was reasonable for Counsel to focus
> on one defense, rather than diminishing its strength by suggesting
> alternative defenses to the jury.

(ECF 10-22 at 135-36 and 147-48) (internal citations omitted).

The Appellate Division affirmed Judge Pincus's denial of the IAC Capacity-Claim without significant discussion, but expressly found that the claim had "no merit." (DE 10-29 at 8.)

The last reasoned decision on the IAC Capacity-Claim was from Judge Pincus during PCR proceedings. The Judge laid out the relevant *Strickland* standard for analyzing that claim. (DE 10-22 at 135-36.) The record supports the PCR court's finding, affirmed by the Appellate Division, that counsel made a tactical decision to pursue an accident defense and forgo an alternative defense of diminished capacity / voluntary intoxication. Nothing in the record supported Mr. Defazio's claim of diminished capacity or voluntary intoxication. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 690). Therefore, the Appellate Division reasonably applied the *Strickland* standard in denying the IAC-Capacity claim.

Mr. Defazio bears the burden of establishing his entitlement to relief on each claim. Yet he has failed to give any support for the IAC Capacity-Claim, aside from a own bare-bones allegation that his pain medication usage would have justified a diminished capacity defense.

Accordingly, the Court will deny the IAC Capacity-Claim.

## 5. IAC – Failure To Investigate Four Witnesses

In Ground One's fifth sub-part, Mr. Defazio contends that Mr. Weiner rendered IAC by "fail[ing] to conduct any investigation into the facts of Petitioner's case in order to establish all available defenses and to obtain evidence and interview witnesses [Herb Sandberg, Iris Edelman, Victor Gonzalez, and Sharon Glovich]" (referred to as "the Four Witnesses").) (ECF No. 1 at 17-20 ("IAC-Witnesses Claim").)

It is useful to summarize the relation of the Four Witnesses to the facts.

Herbert Sandberg was Mr. Defazio's "friend [who] testified at trial that in early 1997, prior to [the victim's] death, [Petitioner"] told him, on several occasions, that he got rid of Ms. Sanders and that she would not be appearing at a custody hearing scheduled for January 1997. Mr. Sandberg also testified that [Petitioner] told him that if he wanted to get rid of a body he would dig a hole in the woods, bury it, and cover it with lime." (DE 10-22 at 128.) Mr. Defazio states that "Sandberg wanted to inform counsel about the way he was interviewed by police … However, [counsel did not investigate due to] not wanting to pay the retainer for [investigative] services." (Petition at 17.)

Iris Edelman was the mother of Richard Edelman, a friend of Mr. Defazio's.[1] Richard Edelman testified that while working on a car in February of 1997, Mr. Defazio "asked him and Mr. Sandberg how they would dispose of a body if they killed someone … [Petitioner] responded that he would bury the body after covering it with lime ... At trial, … Mr. Edelman testified that [Petitioner] called him Saturday night and told him that he had killed Ms. Sanders

---

[1]     Petitioner's PCR application states that Iris Edelman "was a fact witness as she was present for portion of a conversation in her garage between her son, Richard Edelman, and his friends, Herb Sandberg and Steffan Franklin [also known as Anthony Defazio]." (DE 10-14 at 55-56.) The PCR petition states that Victor Gonzalez is Iris Edelman's brother. (*Id.* at 56.)

and buried her. On Sunday night, [Petitioner] called Mr. Edelman to tell him that he had done a very bad thing, but did not say what that thing was. On Monday evening, [Petitioner] phoned Mr. Sandberg and advised him that he had sex with a dead person and was going away for a long time." (DE 10-22 at 128-29, 130-31.) Mr. Defazio claims that "Iris Edelman and Victor Gonzalez were other witnesses that counsel knew about and failed to have interviewed. These witnesses were critical to a material issue at trial where the State portrayed a conversation that took place in a garage as evidence that Mr. Defazio premeditated the death." (Petition at 17.)

Sharon Glovich was "an acquaintance" of Mr. Defazio's who testified at trial that he told her "that he hated [the victim] and if he had the money he would hire someone to kill her." (DE 10-22 at 128.) Mr. Defazio claims that Ms. Glovich "was a significant witness for the State and counsel was provided with information showing her statement to the police was a total fabrication." (Petition at 18.)

With respect to the Four Witnesses, Judge Pincus ruled that Mr. Defazio had "not established a prima facie case of ineffective assistance of counsel," in that he had not met *Strickland*'s prejudice prong. The court explained how Mr. Defazio "ha[d] not demonstrated a reasonable probability that, but for his attorney's [alleged] errors, the jury would have returned a different verdict":

> In this case, it is clear that the State had an extremely strong case against Defendant, which demonstrated that Defendant premeditated and planned the murder of Ms. Sanders and disposed of her body. Defendant never denied killing Ms. Sanders, but rather argued that he accidentally strangled her. The State was able to establish that Defendant and Ms. Sanders had a tumultuous relationship in which there was a significant amount of arguing and fighting. Defendant kicked in the door of Ms. Sanders's mother's home after a fight. Defendant previously threatened to kill Ms. Sanders. Defendant told a witness that he would like to have Ms. Sanders killed, but since he could not afford to hire someone to do it, he would do it himself and bury her in a hole and pour lime on

18

top of her. Defendant told another witness that he would like to get rid of Ms. Sanders before the next custody hearing. Further, Defendant described to his friends the best way to kill somebody and dispose of the body. Defendant was angry at Ms. Sanders due to issues related to custody and support of [their daughter] Paige. Defendant did not tell anyone that he was meeting Ms. Sanders on the day he murdered her. The medical examiner testified that the cause of death was asphyxia due to some type of strangulation and the manner of death was homicide. Defendant admitted he killed Ms. Sanders and did nothing to resuscitate her. Defendant took many actions to avoid detection. He sent his girlfriend out to do some errands and advised her to call him before she returned home. Defendant testified that after instructing his girlfriend not to return home, Defendant wrapped up Ms. Sanders' body and placed it, along with a shovel, in the trunk of his girlfriend's vehicle. Defendant then drove to Allentown, Pennsylvania, dug a hole in a construction site, and disposed of Ms. Sanders' body. On the night of the murder Defendant phoned a friend to tell him that Ms. Sanders was dead and Defendant described the strangulation as being easier than he thought it would be. Defendant asked the friend for his help in disposing of the body. The following night, Defendant phoned another friend to tell him that he had done a very bad thing. During another conversation, Defendant advised his friend that he had sex with a dead person and was going away for a long time. Moreover, Defendant provided the police with a false alibi as to where he had been at the time of the murder.

This testimony overwhelmingly demonstrates the strength of the State's case against Defendant and indicates the vast amount of evidence presented to the jury that Defendant murdered Ms. Sanders and attempted to cover it up.

(DE 10-22 at 150-52.)

The Appellate Division found "no merit" to the IAC-Witnesses Claim and "affirm[ed] substantially for the reasons stated by Judge Pincus." (DE 10-29 at 8.)

In finding that counsel's performance did not work prejudice, Judge Pincus -- and the Appellate Division's affirmance of him -- did not violate clearly established law. The state court rulings were not unreasonable in their application of *Strickland*. Nor were those rulings based on unreasonable determinations of the facts in light of the evidence presented during Petitioner's

state court proceedings. For example, Mr. Defazio "proffered no facts to support a reasonable probability that the results of the trial would have been different. [W]itnesses [testified at trial] that [Petitioner] said in effect he would kill the victim, he would bury the body in the woods and cover it with lime. After the murder, defendant told a witness that he got rid of the victim by strangling her and that it was neat, bloodless, and easier than he thought. At trial, Mr. Defazio admitted he did not try to resuscitate the victim or call anyone for help." (DE 10-29 at 11.)

In light of the foregoing, I find that the Appellate Division's rejection of Mr. Defazio's IAC-Witnesses Claim constituted a reasonable application of the *Strickland* standard. Mr. Defazio did not and cannot establish that he was prejudiced under the *Strickland* test. His trial counsel's failure to investigate the Four Witnesses would not have changed the facts of Mr. Defazio's premeditated and planned murder of the victim -- or his failure to deny that he strangled her. Furthermore, the record is devoid of any material demonstrating -- or even suggesting -- that "there is a reasonable probability that the result of the [case] would have been different," *Hinton,* 134 S. Ct. at 1083, had counsel "obtain[ed] evidence [from] and interview[ed]" (Petition at 17) the Four Witnesses.

Particularly relevant to this case is that "[p]rejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said." *D'Amario v. United States of America,* 403 F. Supp. 2d 361, 372 (D.N.J. 2005) (citing *Duncan v. Morton,* 256 F.3d 189, 201–02 (3d Cir. 2001); *Lewis v. Mazurkiewicz,* 915 F.2d 106, 113 (3d Cir.1990)). (And of, what *is* known about these witnesses' testimony is that it was highly damaging to Defazio.) Here, I cannot conclude that Defazio was prejudiced by counsel's actions with respect to the Four Witnesses. Defazio has failed to provide any supporting documentation, in the form of affidavits or otherwise, detailing what they would have said or what evidence they

20

would have produced that had any likelihood of changing the outcome of the trial. For example, Defazio makes a bare claim that Glovich made a statement to police that was fabricated. (Petition at 18) He does not, however, describe the specific facts that were allegedly fabricated; identify the manner in which Glovich would have aided Mr. Defazio's defense if counsel had investigated her; particularize the specific evidence she would have provided to exculpate him; or set forth how facts in Glovich's police statement would have impeached her and thereby affected the case's outcome. Mr. Defazio is therefore not entitled to habeas relief on this claim.

For the reasons expressed above, Ground One of the Petition, including all of its subparts, is denied.

## B. **Ground Two: Ineffective Assistance of Counsel (conflicts of interest)**

In Ground Two, Mr. Defazio alleges that Mr. Weiner was burdened by "multiple conflicts of interest" and therefore ineffective. (Petition at 7.)

### 1. **Ineffectiveness *per se* – disbarment**

In Ground Two's first sub-part, Mr. Defazio contends that Judge Pincus erred in not finding Mr. Weiner per se ineffective based on "counsel's disbarment." (Petition at 20 ("IAC-Disbarment Claim").)

The PCR court noted that in July of 2004 (over four years after Defazio's conviction became final), the New Jersey Supreme Court temporarily suspended Mr. Weiner. In 2005, Mr. Weiner was charged in an indictment with multiple counts of theft by deception. On April 13, 2006, Mr. Weiner pled guilty to two counts of third-degree theft by deception. On June 23, 2006, Mr. Weiner was sentenced to a term of four years' probation. In October of 2006, the New Jersey Supreme Court disbarred Mr. Weiner. (DE 10-22 at 125-26.) Judge Pincus stated that Mr. Defazio "relies upon Counsel's disbarment and conviction [for theft by deception] to support his

contention of [IAC.]" (*Id*. at 136.) Judge Pincus cited to New Jersey case law that rejects any such *per se* rule of IAC based on counsel's personal misconduct. Relying on this state law, Judge Pincus ruled that:

> The two-part test adopted in *Strickland* is sufficiently protective of a defendant's rights and the critical inquiry is whether, for whatever reason, counsel's performance was deficient, and whether the mistakes made, prejudiced the defendant's right to a fair trial ... [Here,] the inappropriate financial dealings between Counsel and Defendant's parents did not have an effect on the outcome of the trial.

(DE 10-22 at 137-38) (internal citations omitted).

The Appellate Division found "no merit" to Mr. Defazio's IAC-Witnesses Claim and "affirm[ed] substantially for the reasons stated by Judge Pincus." (DE 10-29 at 8.)

I cannot find fault with those state court rulings.

A federal habeas court "may grant relief under the 'unreasonable application' clause [of § 2254(d)(1)] if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). That is, under the "unreasonable application" clause of § 2254(d)(1), courts look to whether the state court's application of law was "objectively unreasonable" and not simply whether the state court applied the law incorrectly. *Williams v. Taylor*, 529 U.S. 362, 411 (2000). The question on habeas review is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether the determination was unreasonable -- a substantially higher threshold. *Knowles*, 556 U.S. at 123; *Schriro v. Landrigan*, 550 U.S. at 474.

In finding that Mr. Weiner's performance was not per se deficient, the state courts did not violate clearly established law. In fact, Mr. Defazio has not, in the first instance, cited any United States Supreme Court precedent -- and this Court is not aware of any -- holding that an attorney is per se ineffective under *Strickland* by reason of his or her subsequent disbarment. Furthermore, I am unable to find that the state courts' rulings were unreasonable in their application *of Strickland*. The only evidence presented by Mr. Defazio to support his claim of per se ineffectiveness was his contention that Mr. Weiner was disbarred for violations of professional misconduct rules and for purported mishandling of fees in Mr. Defazio's case. (Petition at 20.) He does not, however, demonstrate the requisite connection between Mr. Weiner's disbarment and *Strickland*'s application: *i.e.*, Mr. Defazio has not shown how Mr. Weiner's disbarment and supposed financial misconduct were "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment" and prejudiced the defense such that he was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687. In fact, the state courts expressly found that Mr. Weiner's decisions implemented reasonable trial strategies, especially in a case where the defendant admitted to grabbing the victim's neck until she went limp and died. (DE 10-8 at 6.) The state courts properly reviewed Mr. Defazio's IAC-Disbarment Claim in accordance with the *Strickland* standard. Federal precedent did not warrant a different outcome here. Thus, Mr. Defazio's claim on this ground does not justify habeas relief.

The Court will therefore deny Ground Two's IAC-Disbarment Claim.

### 2. IAC – Counsel's Failure To Object And Request A Limiting Instruction As To Petitioner's Pre-Arrest Failure To Report The Victim's Death

In Ground Two's second sub-part, Mr. Defazio argues that Mr. Weiner rendered IAC by "failing to object to the prosecutor's improper line of questioning about his failure to report the

death, and for failing to request a hearing barring such testimony and/or requesting a limiting instruction on the use of such testimony. This line of questioning was improper because it went to [Petitioner's] pre-arrest silence." (Petition at 21 ("IAC-Objections Claim").)

At trial, Mr. Defazio testified as follows during cross-examination by the prosecutor:

> Prosecutor: Now, when she went limp, did that scare you?
>
> Mr. Defazio: That's when I pulled her off of the bed and put her on the floor to check if she was breathing.
>
> Prosecutor: That when you called 9-1-1?
>
> Mr. Defazio: No.
>
> Prosecutor: Did you call a neighbor?
>
> Mr. Defazio: No.
>
> ***
>
> Prosecutor: Did you look for help?
>
> Mr. Defazio: No.

(DE 10-44 at 52-53.)

In PCR proceedings, the State argued that Mr. Defazio's claims involving "issues of cross-examination ... [and] the lack of a limiting instruction concerning [Petitioner's] failure to report the death" were procedurally barred under New Jersey Rule of Court 3:22-4(a). (DE 10-22 at 133.) That Rule "bars a claim if the defendant could have, but did not, raise the claim in a prior proceeding." (*Id.*) Judge Pincus acknowledged the State's procedural-bar arguments, but noted nevertheless that the claim was asserted in the context of IAC, and that "ineffective assistance of counsel claims are ordinarily exempt from the bar of R[ule] 3:22-4 ... As such, petitioners are rarely barred from raising such claims on post conviction review." (*Id.* at 133-34 (internal citations omitted).) Accordingly, "to the extent" Petitioner's IAC-Objections Claim was

"intertwined with [Petitioner's] claims of ineffective assistance of counsel," Judge Pincus said, he would address those issues. (*Id.* at 134.)

Undertaking that review, Judge Pincus determined that, "[e]ven assuming [Petitioner] has satisfied the first prong of *Strickland* with regard to some of the issues presented," he did "not satisf[y] the second prong." Specifically, Mr. Defazio had not shown a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at 150-51 ("[I]t is clear that the State had an extremely strong case against [Petitioner]").)

The Appellate Division agreed, finding "no merit" to the IAC-Objections Claim and "affirm[ing] substantially for the reasons stated by Judge Pincus." (DE 10-29 at 8.)

Applying controlling federal precedent, I am unable to find fault with the state courts' rulings. The reasoning of Judge Pincus is persuasive. Even if Mr. Weiner was ineffective for (1) not objecting to the prosecutor's questions about Mr. Defazio's failure to report the death or (2) not requesting a limiting instruction about that testimony, I cannot realistically see how any such objection or limiting instruction would have changed trial's outcome.[2] The State "demonstrated that [Mr. Defazio] premeditated and planned the murder of Ms. Sanders and disposed of her body." (DE 10-22 at 150.) Mr. Defazio "never denied killing Ms. Sanders." (*Id.*) In this context, he simply cannot demonstrate that an objection or limiting instruction about his failure to report the death would have changed his case's outcome.

The Court will deny Ground Two's IAC-Objection Claim.

---

[2]     A key issue, of course, was criminal intent. Defazio's failure to report the death or summon medical help was relevant to the issue of whether the killing was intended or accidental.

### 3. IAC – Counsel's Failure To Investigate The Law And Facts

In Ground Two's third sub-part, Mr. Defazio alleges that Mr. Weiner rendered IAC by "failing to conduct any investigation into the law and facts of the [Petitioner's] case." (Petition at 21 ("Ground Two IAC-Investigation Claim").) In support of this claim, Defazio states that counsel rendered IAC "[f]or all of the reasons in Ground One." (*Id.*)

Mr. Defazio alleges no new facts or arguments in support of Ground Two's IAC-Investigation Claim that were not already addressed by this Court as to the analogous claim under Ground One. Accordingly, the Court will deny Ground Two's IAC-Investigation Claim for the reasons stated in Section IV(A) of this Opinion.

### 4. IAC – Counsel's Failure To Request A Self-Defense Jury Charge

In Ground Two's fourth sub-part, Mr. Defazio argues that Mr. Weiner rendered IAC by failing to request a self-defense jury charge. (Petition at 22 ("IAC-Charge Claim").)

It appears from the record that he did not specifically raise the self defense charge claim as an IAC claim during PCR. Rather, he argued that the trial court erred by not sua sponte giving the jury a self-defense charge. (DE 10-14 at 94-96.) This suggests that Ground Two's IAC-Charge Claim is unexhausted.

As noted *supra*, to the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728. I will apply that principle here, and in doing so I find Ground Two's IAC-Charge Claim to be without merit.

As noted *supra* as to Ground One's IAC Self-Defense Claim, the facts at trial showed that the level of force that Mr. Defazio applied was grossly disproportionate, even if it is

assumed that the victim was the aggressor in slapping him or throwing a hair brush. Self-defense, especially in the form of deadly force, was not a promising strategy, and it had great backfire potential. Counsel's decision to forgo a self-defense jury charge did not "f[a]ll below an objective standard of reasonableness." *Jacobs*, 395 F.3d at 102. Under these circumstances, Mr. Weiner did not furnish deficient representation in failing to request a self-defense jury instruction. Mr. Defazio has failed to present any facts, context, or other information to suggest otherwise.

That conclusion is further supported by Judge Pincus's ruling that Mr. Weiner was reasonable in requesting a jury charge on passion/provocation manslaughter. *See* DE 10-22 at 147 and 149 ("Counsel explained how, on the day of the murder, Defendant and Ms. Sanders fought like they never had before. Counsel discussed the volatile chemistry between Defendant and Ms. Sanders which led to the tragedy"). The turbulent relationship between Mr. Defazio and Ms. Sanders suggested a jury charge on passion/provocation; his use of disproportionate force suggested that self-defense was an implausible theory. Indeed, these two scenarios, if put forward simultaneously, could well have weakened each other; to pick the more promising of the two was a reasonable strategy.

The Court will deny Ground Two's IAC-Charge Claim.

### C.  Ground Three: Due Process/*Brady* Claim

In Ground Three, Mr. Defazio alleges that the State violated his due process rights "by withholding evidence that was material and favorable to [Petitioner,] [thus] violating [its] discovery obligation and *Brady v. Maryland*." (Petition at 23 ("Brady Claim").)

In his PCR application, Mr. Defazio argued that the State "withheld various relevant documents concerning the State's witnesses that would have been integral to the Defendant's

case. These documents would have given Trial Counsel considerable leverage in undermining the credibility of the State's witnesses' testimonies at Trial." (DE 10-14 at 104 (referring to "significant records and documents relating to the decedent's violent nature").) Mr. Defazio failed to identify the documents allegedly withheld or describe how they were so exculpatory as to violate *Brady v. Maryland*, 373 U.S. 83 (1963). Instead, he merely string-cited, without elaboration, to documents in his supporting appendix. (DE 10-14 at 104 ("See Exhibits 45-53, 59-61, 105, 109-110").) Ground Three's *Brady* Claim does not provide any further detail. (*See* Petition at 23 (referring only to "various relevant records" and "aforementioned information").) Judge Pincus rejected Mr. Defazio's PCR application in its entirety. (DE 10-22.) The Appellate Division affirmed. (DE 10-29.)

I cannot find those state court decisions objectively unreasonable.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), a violation occurs if: (1) the evidence at issue is favorable to the accused, because either it is exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn,* 642 F.3d 126, 133 (3d Cir. 2011) (citations omitted). Not every failure to disclose favorable evidence to the defense requires a reversal of the conviction, as the evidence must be material. *See United States v. Veksler,* 62 F.3d 544, 550 (3d Cir. 1995). As the United States Court of Appeals for the Third Circuit has explained:

> Under *Brady,* "[e]vidence is material if there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different." "[T]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is shown when the government's evidentiary suppression undermines confidence in the outcome of the trial.'"

*Breakiron,* 642 F.3d at 133–34 (internal citations omitted). *See also Kyles v. Whitley,* 514 U.S. 419, 433 (1995); *United States v. Bagley,* 473 U.S. 667, 682 (1985).

As noted *supra,* habeas petitioners have the burden of establishing their entitlement to relief for each claim presented in their petition based upon the record that was before the state court. *See Eley,* 712 F.3d at 846; *see also Parker,* 567 U.S. at 40-41. Mr. Defazio has failed (1) to identify precisely which documents the State possessed but failed to produce, and also (2) to give any legal support for the *Brady* Claim. Ground Three consists of nothing more specific than a vague and wholly conclusory contention about the materiality of "various relevant records." Some exhibit numbers are cited, but they do not correspond to anything that is before the Court. The State, in its brief, suggests that the reference may be to some records of DYFS pertaining to child custody and other disputes between Defazio and Sanders. If that is so, it is by no means apparent how these records (assuming they were in the State's possession, and withheld, and not within Defazio's possession) would have tended to negate Defazio's culpability.

Without more, this court cannot undertake the three-pronged *Brady* analysis -- *i.e.,* the evidence's favorable nature, the prosecution's withholding of it, and prejudice to him. *See Breakiron,* 642 F.3d at 133. In short, Mr. Defazio has not met his burden of establishing his entitlement to relief.

The Court will deny Ground Three's *Brady* Claim

.

### D. Ground Four: Violation Of Due Process And Denial Of Fair Trial

In Ground Four, Mr. Defazio alleges deprivation of his rights to due process and fair trial. (DE at 24.)

#### 1. Due process – Trial Judge's Facial Expressions

In Ground Four's first sub-part, Mr. Defazio claims that "facial expressions made by the trial judge in response to defense counsel's questions of the State's medical expert were unduly prejudicial ... The trial judge is an imposing figure. As a symbol of experience, wisdom, and impartiality, jurors have a natural tendency to look to the trial judge for guidance ... Petitioner was denied his right to a fair trial because the facial expressions of the trial judge showing disapproval of defense counsel were seen by and impacted the jury improperly." (Petition at 25 ("Expression Claim").)

Judge Pincus ruled that Mr. Defazio's Expression Claim "could have been raised on direct appeal and [is] therefore barred in this Post-Conviction Relief proceeding." (DE 10-22 at 134.) The Appellate Division affirmed, finding "no merit" to Mr. Defazio's contention. (DE 10-29 at 8.)

A federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)). That is, if a petitioner's claims were denied because he failed to raise them in accordance with state procedural rules, that is not, generally speaking, an issue that can be addressed on federal habeas. Rather, the state court's rulings may be said to rest upon "an independent and adequate state ground" -- independent, that is, of any federal constitutional infirmity. *Trevino v. Thaler*, 569 U.S. 413, 421 (2013) (citing *Coleman*, 501 U.S. at 729–30). *See also Walker v. Martin*, 562 U.S. 307, 316 (2011).

When a petitioner's procedural default has prevented the state courts from reaching the merits of his claims, federal habeas review of those claims is ordinarily barred. *See Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991). A federal habeas court may excuse a claim's procedural default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva,* 504 F.3d at 366 (citing *Lines v. Larkins,* 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor,* 504 F.3d at 427; *Bronshtein,* 404 F.3d at 728.

Applying the controlling federal precedent, I am unable to find fault with the state courts' ruling on the Expression Claim. New Jersey Rule of Court 3:22-4(a) precludes collateral relief on grounds raised for the first time in a PCR proceeding that could have been raised on direct appeal or prior PCR proceeding. Mr. Defazio had not brought the Expression Claim on direct appeal, and he did not demonstrate to the state courts that any of Rule 3:22-4(a)'s three exceptions applied to excuse the procedural bar (*i.e.*, (1) the claim "could not reasonably have been raised in a prior proceeding"; (2) "exceptional circumstances" existed; or (3) "fundamental injustice" would occur). The state courts' ruling on the Expression Claim rested on an adequate and independent state law ground. *See Trevino,* 569 U.S. at 421; *Walker,* 562 U.S. at 316.

In addition, neither has Mr. Defazio demonstrated -- nor does the record suggest -- (1) cause and prejudice for procedural default of the Expression Claim or (2) a fundamental miscarriage of justice if that default is sustained.

Even setting aside the procedural default, the Expression Claim would still fail on the merits. Habeas petitions alleging general improprieties during the state trial are not subject to federal court review unless the error resulted in a fundamentally unfair proceeding and thus

violated a petitioner's due process rights.[3] Unless a constitutional violation occurs at trial, the claim is governed by state law and is not subject to habeas review. Mr. Defazio here has neither (1) particularly described the supposed "facial expressions of disapproval" (Petition at 25) nor (2) demonstrated that they in fact resulted in a fundamentally unfair proceeding. Thus, Mr. Defazio's claim on this ground does not justify habeas relief.

The Court will deny Ground Four's Expression Claim.

### 2. Failure To Give Self-Defense Charge Sua Sponte

In Ground Four's second sub-part, Mr. Defazio claims that the trial court "erred by not providing a self-defense charge to the jury sua sponte." (Petition at 25 ("Ground Four's Sua Sponte Charge Claim").) He suggests that "[t]he evidence in this matter provided the judge with a rational basis for the applicability of a self-defense charge." (*Id.*)

I find that Ground Four's Sua Sponte Charge Claim must be denied for the same reasons that Ground Two's IAC-Charge Claim must be denied: self-defense, especially in the form of deadly force, was not supportable under the evidence at trial. To forgo it was a reasonable trial strategy, and indeed to assert it would have been a poor defense strategy. Under the state court record described *supra*, the trial court's decision not to sua sponte give a self-defense jury charge was appropriate. (*See* DE 10-22 at 148 ("There is no support for the idea that Defendant believed the force was reasonably necessary to protect himself against death or serious bodily injury").) Mr. Defazio has not identified any United State Supreme Court precedent mandating that the trial court give an unrequested self-defense charge in these circumstances. For these reasons, I

---

[3] "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness." *See, e.g., California v. Trombetta*, 467 U.S. 479, 485 (1984); *Medina v. California*, 505 U.S. 437 (1992); *Moran v. Burbine*, 475 U.S. 412, 432 (1986).

cannot find that the state courts' rulings on this issue amounted to an unreasonable application or was contrary to federal precedent.

The Court will deny Ground Four's Sua Sponte Charge Claim.

### 3. Failure To Provide Limiting Instruction As To Petitioner's Pre-Arrest Silence

In Ground Four's third sub-part, Mr. Defazio claims that the trial court "should have provided an instruction limiting use of Defendant's pre-arrest silence." (Petition at 25 ("Silence Claim".) In support, Mr. Defazio relies on "the reasons discussed in Ground Two, B [*i.e.*, the IAC-Objections Claim[4]]." (*Id.*)

Judge Pincus ruled that "the lack of a limiting instruction could have been raised on direct appeal and [is] therefore barred in this Post-Conviction Relief proceeding." (DE 10-22 at 134.) The Appellate Division affirmed. (DE 10-29 at 8.)

Mr. Defazio alleges no new facts or arguments in support of Ground Four's Silence Claim that were not already addressed herein as to Ground Two's IAC-Objections Claim. Thus, I will deny the Silence Claim for all of the reasons stated *supra* in Section IV(B)(2).[5]

### E. Ground Five: Passion/Provocation Manslaughter Instruction

Mr. Defazio claims that the trial court's passion/provocation manslaughter instruction was "fatally flawed because it shifted the burden of proof on the issue of provocation and failed to adequately define provocation in the context of the facts of the case." (Petition at 26 ("Passion/Provocation Claim").)

At trial, the judge instructed the jury as follows:

---

[4] In Ground Two's IAC-Objections Claim, Petitioner argued that Mr. Weiner rendered IAC by "failing to … request[] a limiting instruction on the use of [Petitioner's] testimony … about his [silence] [when] fail[ing] to report the death." (DE 1 at 21.)

[5] *Trombetta*, 467 U.S. at 485; *Medina*, 505 U.S. 437; *Moran*, 475 U.S. at 432.

> Now, if you find beyond a reasonable doubt that the defendant
> purposely or knowingly caused Darlene Sanders's death or that he
> purposely or knowingly caused serious bodily injury resulting in
> death and that he did not act in the heat of passion resulting from a
> reasonable provocation the defendant would be found guilty of
> murder. If, however, you find that the defendant purposely or
> knowingly caused death or serious bodily injury resulting in death
> and that he did act in the heat of passion resulting in a reasonable
> provocation the defendant would be guilty of passion provocation
> manslaughter.

(DE 10-8 at 8.) The trial judge then defined the essential elements in detail:

> In order for you to find the defendant guilty of murder as charged
> the State is required to prove each of the following elements
> beyond a reasonable doubt. One. That the defendant Steffan
> Franklin caused Darlene Sanders's death or caused serious bodily
> injury resulting in her death and, two, that the defendant did so
> purposely or knowingly. And that's in the alternative. He doesn't
> have to. The State doesn't have to show that it was purposeful and
> knowing but purposeful or knowing, and I will define those terms
> for you. And the third element that the State must prove beyond a
> reasonable doubt is that the defendant did not act in the heat of
> passion resulting from reasonable provocation. That is the State's
> burden.

(*Id.*) The trial judge then defined "purposely," "knowingly," and "serious bodily injury resulting

in death." (*Id.*) The trial court concluded this section by stating:

> Now, whether the killing is committed purposely or knowingly
> causing death or serious bodily injury resulting in death must be
> within the design or contemplation of the defendant. The third
> element that the State must prove beyond a reasonable doubt to
> find the defendant guilty of murder is that the defendant did not act
> in the heat of passion resulting from a reasonable provocation.

(*Id.* at 9.)

The trial judge then transitioned to the offense of passion/provocation

manslaughter.

> In order for you to find the defendant guilty of murder the State
> need only disprove one of them, one of those four factors beyond a
> reasonable doubt. And again, be clear. In order for you to find the

defendant guilty of murder the State need only disprove ... one of those four factors beyond a reasonable doubt.

(*Id.* at 9.) The judge then explained each of the four factors of passion/provocation manslaughter,

including:

> **First you must determine the provocation was adequate. Whether the provocation is adequate essentially amounts to whether loss of self-control is a reasonable reaction to the circumstances. The provocation must be sufficient to arouse the passions of the ordinary person beyond the power of his control. For example, words alone do not constitute adequate provocation. I can imagine that one is hurt but they don't constitute adequate provocation under provocation manslaughter, passion manslaughter.**
>
> **On the other hand, the threat of a gun or a knife with a -- for a significant physical confrontation might be considered adequate provocation. That is for you to decide, ladies and gentlemen. But the provocation must be sufficient to arouse the passions of any ordinary person beyond the power of his control.**

(*Id.* at 10) (These two **highlighted** paragraphs are referred to as the "Challenged Charges.")

The judge then concluded:

> If you determine that the State has disproved beyond a reasonable doubt that there was adequate provocation or that the provocation actually impassioned the defendant or that the defendant did not have a reasonable time to cool off or that the defendant did not actually cool off and in addition to disproving one of those four factors you determine that the State has proven beyond a reasonable doubt that the defendant purposely or knowingly caused death or serious bodily injury resulting in death you must find the defendant guilty of murder.

> If, on the other hand, you determine that the State has not disproved at least one of those four factors of passion provocation manslaughter beyond a reasonable doubt but you are satisfied that the State has proven beyond a reasonable doubt that the defendant purposely or knowingly caused death or serious bodily injury resulting in death then you must find him guilty of passion provocation manslaughter.

(*Id*. at 9-10.) The judge thereafter gave charges on lesser-included offenses and gave the jury special verdict interrogatories, which again underscored that the State must disprove beyond a reasonable doubt at least one of the four passion/provocation factors as a prerequisite to finding the defendant guilty of murder. (*Id*. 10.)

Mr. Defazio raised the Passion/Provocation Claim on direct appeal. (DE 10-6 at 2, 28-36.) He argued that the Challenged Charges, referring to "adequate provocation, suggested that he bore the burden to prove that he was, in fact, provoked." (DE 10-8 at 10.)

Relying on *State v. Brooks*, 706 A.2d 757, 768 (N.J. App. Div.), *certif. denied*, 718 A.2d 1215 (N.J. 1998), the Appellate Division rejected Mr. Defazio's Passion/Provocation Claim, explaining as follows:

> [In *Brooks*,] [b]etween the[] repeated instructions and defendant's failure to object, we found no plain error. So too here. Defendant did not object to this part of the charge. Moreover, as in *Brooks*, defendant in this case focuses on a limited portion of the jury instruction, and not the charge as a whole. When the charge as a whole is reviewed, it is clear that the trial judge repeatedly emphasized the State's burden to prove all of the elements of murder, including the absence of the four elements of passion/provocation. Although the verdict sheet did not refer to the State's burden to disprove one of the passion/provocation elements, there is no requirement that the verdict sheet repeat all of the judge's instructions. In short, under no reading of the charge as a whole could the jury have understood that the burden of proving provocation was on the defendant.

(DE 10-8 at 11-12.) On October 24, 2000, the New Jersey Supreme Court denied certification. (DE 10-12.)

Generally, questions relating to jury instructions are matters of state law not subject to review by a habeas court. *See Enale v. Isaac*, 456 U.S. 107 (1982); *Henderson v. Kibbe*, 431 U.S. 145 (1977). Thus, even a jury instruction (or lack of one) that contains an error of state law does not necessarily merit federal habeas relief. Instead, petitioner who challenges state jury

instructions must "point to a federal requirement that jury instructions ... must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Under these principles, in cases where a federal habeas petitioner seeks relief based upon the jury instructions given in a state criminal proceeding:

> The only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

*Estelle v. McGuire,* 502 U.S. 62, 72–73 (1991) (internal citations omitted).

The Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." *Smith v. Horn,* 120 F.3d 400, 416 (1997). *See also In re Winship,* 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); *Sandstrom v. Montana,* 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

And even when such a constitutional error has occurred, it is subject to "harmless error" review under the specialized standards applicable to habeas petitions. *See Brecht v. Abrahamson,* 507 U.S. 619 (1993); *Neder v. United States,* 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas]

court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." *Smith v. Horn,* 120 F.3d at 418 (citing *California v. Roy,* 519 U.S. 2, 5 (1996)).

> [A] single instruction ... may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

*Middleton v. McNeil,* 541 U.S. 433, 437 (2004) (internal quotation marks and citations omitted).

Thus, even if there is "'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation. Rather, the defendant must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad,* 555 U.S. 179, 190–91 (2009) (internal citations omitted).

The Appellate Division authoritatively ruled that the challenged jury instructions comported with the requirements of state law and were not ambiguous. Even standing alone, that would ordinarily be a sufficient basis to deny habeas relief. *See Waddington,* 555 U.S. at 190-91. Deference aside, however, I concur with the state court's analysis. There is no credible argument that the instructions, as delivered, relieved the State of its burden to prove the essential elements of the offense beyond a reasonable doubt. Viewed as a whole, they left the burden where it belonged, on the prosecution. Nor are the challenged state court rulings contrary to or an unreasonable application of controlling United States Supreme Court precedent. The Challenged Charges fairly presented the passion/provocation issue to the jury, did not undermine the burden of proof, and did not render Mr. Defazio's trial unfair. Based on the record, I conclude that the

Appellate Division's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

The Court will deny Ground Five's Passion/Provocation Claim.

### F. Ground Six: Prejudicial And Irrelevant Bad Acts Evidence

Mr. Defazio claims that the "admission of highly prejudicial and irrelevant evidence of other bad acts deprived defendant of a fair trial." (Petition at 27 ("Bad Acts Evidence Claim".)

Mr. Defazio raised the Bad Acts Evidence Claim on direct appeal. (DE 10-6 at 2, 37-46.) He argued that the trial judge improperly admitted the following evidence of his bad acts: (a) speeding with Ms. Sanders and their children in the van, threatening to kill them, and then kicking in the door of Ms. Sanders's mother's house in an attempt to see Sanders; (b) taking Ms. Sanders's car and forcing her to move back to New Jersey in order to see her children; (c) isolating her after they moved back to New Jersey; (d) failing to pay child support, causing Ms. Sanders to be evicted and work two jobs; and (e) pushing Ms. Sanders out of a car. (DE 10-8 at 13.)

The Appellate Division rejected the Bad Acts Evidence Claim. (DE 10-8 at 13-17.) The court cited New Jersey Rule of Evidence 404(b), which renders bad-acts evidence admissible for purposes such as motive, intent, preparation, and opportunity. Citing to Mr. Defazio's testimony that the victim's death "was an accident," the Appellate Division found the bad-acts evidence admissible under Rule 404(b):

> Defendant's prior acts were relevant because they demonstrated the deteriorated relationship between defendant and the victim, part of the "mosaic" against which the killing must be judged. All of defendant's statements and conduct defined the foundering state of his relationship with the victim and thus were admissible as background ...

> In this case, the State's theory was that defendant intended to murder Darlene, while defendant testified that the death was an "accident." Therefore, the disputed accident theory was before the jury. Even if we discard the "accident" defense and focus on passion/provocation, defendant's prior acts of violence and threats -- even toward the children, and his refusal to pay child support were highly relevant to the State's theory that this was a planned murder, rather than a death resulting from reasonable provocation. A jury could reasonably infer from the evidence that defendant's intense animosity toward Darlene fueled his motive to obtain custody of their child through violent means rather than the judicial process, thus supporting the State's theory that the murder was purposeful or knowing.

(DE 10-8 at 15-17.) The New Jersey Supreme Court denied certification. (DE 10-12.)

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *Eatelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers,* 497 U.S. 764, 680 (1990)). However, the Bad Acts Evidence Claim is entirely based on state law. Thus, Mr. Defazio cannot obtain relief for any purported errors in the state law evidentiary rulings at his criminal trial, unless they rise to the level of a deprivation of due process. *Estelle,* 502 U.S. at 70 ("[T]he Due Process Clause guarantees fundamental elements of fairness in a criminal trial") (quoting *Spencer v. Texas,* 385 U.S. 554, 563–64 (1967)). For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir. 2001) (holding that admission of evidence may violate due process where the evidence is so inflammatory as to "undermine the fundamental fairness of the entire trial"). *See also Cox v. Warren,* No. 11–7132, 2013 WL 6022520, *8 (D.N.J. Nov.13, 2013).

The state courts determined that the admission of Mr. Defazio's prior bad acts at trial was appropriate under the New Jersey Rule of Evidence 404(b). The evidence was relevant to the issues of whether the killing was an accident, and/or whether it resulted from the heat of provocation. Each is a permissible purpose under Rule 404(b). I find nothing in the record to demonstrate that this evidence was so irrelevant and inflammatory as to deprive Defazio of a fundamentally fair trial. The state courts' decisions as to the Bad Acts Evidence Claim were neither contrary to nor an unreasonable application of federal precedent.

Therefore, the Court will deny Ground Six's Bad Act Evidence Claim.

## V.    CERTIFICATE OF APPEABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

## VI.    CONCLUSION

For the foregoing reasons, Mr. Defazio's § 2254 petition will be denied on the merits. The Court declines to grant a certificate of appealability. An appropriate order will be entered.

DATED: February 28, 2019

KEVIN MCNULTY
United States District Judge

41